**Valerie L. BOCK, Movant,**

v.

**KENTUCKY BAR ASSOCIATION, Respondent.**

**No. 2011–SC–000074–KB.**

Supreme Court of Kentucky.

March 24, 2011.

*OPINION AND ORDER*

Valerie Lynn Bock, KBA No. 86343, was admitted to the practice of law on October 18, 1996 and her bar roster address is 308 North Broadway, Providence, Kentucky 42450. On November 1, 2007, this Court suspended Bock from the practice of law for failing to satisfy her CLE requirements. Bock was then administratively suspended on January 31, 2008 for not paying her KBA dues. On February 21, 2008, Bock received a thirty-day disciplinary suspension in a default disciplinary proceeding based upon five counts of pro-

fessional misconduct. Shortly before expiration of that thirty-day time period, the KBA objected to Bock's automatic reinstatement due to the pendency of the three separate attorney disciplinary proceedings at bar. As a result, she has been suspended from the practice of law since November 1, 2007.

On December 2, 2008, Bock signed a Kentucky Lawyers Assistance Program ("KYLAP") Supervision Agreement and a random drug screening mechanism was put into place. She now moves this Court to impose the sanction of a one hundred eighty-one day suspension from the practice of law, with ninety-one days probated until December 2, 2013, to resolve the three attorney disciplinary proceedings discussed below. Bock's probation would be conditioned upon her continued participation and compliance with the KYLAP program, as well as a $300.00 refund to her former client, Van Nabb, within one hundred twenty days of this Order. Bock also moves this Court to dismiss Count III in KBA file 12040 and Counts II, III, and IV in KBA file 15156. The KBA has no objection, as the parties have agreed to a negotiated sanction pursuant to SCR 3.480(2).

### KBA File 12040

In February 2004, Bock was employed as an associate in the law office of Steve Robey. Bock conferred with Van Nabb, who retained her to review his file and conduct initial research to determine whether he had a viable case. Nabb paid Bock $300.00 to perform that work.

Bock ended her associate employment with Robey in March 2004, meeting with Nabb shortly thereafter to determine if he wanted to proceed with litigation. Nabb paid Bock an additional $300.00 toward the fixed attorney fee of $1,000.00 to file and pursue the case. Bock, though, was un-able to pursue the claims on behalf of Nabb, as she entered a drug treatment program and made contact with the KBA's Lawyers Helping Lawyers Program (now KYLAP) in April 2004.

After leaving treatment, Bock continued her solo practice. Based upon a letter she received from the KBA Client Assistance Program ("CAP"), Bock was advised that Nabb had been unable to receive either his file or refund from Bock or Robey. Bock and Nabb subsequently exchanged a number of phone calls, although Bock acknowledges that her communication did not conform to the duty imposed upon Kentucky attorneys.

After Nabb filed a Bar Complaint against Bock in mid-July 2004, Bock obtained Nabb's file from Robey's office, which had received the file at the time of Bock's termination. The file reflected that Bock performed the initial research to support the $300.00 amount she received for her pre-suit investigative services. Bock personally delivered Nabb's file to the law office of his new counsel.

In February 2005, Bock failed to respond to a letter sent on two occasions from the Office of Bar Counsel requesting additional information regarding the Bar Complaint.

In Count I, the KBA charged Bock with violating SCR 3.130–1.3, which provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." While Bock may have performed the initial portion of her representation by completing the legal research for which she had been retained, Bock admits violating this rule because she did not pursue the legal claim on Nabb's behalf after she accepted the additional $300.00 toward a $1,000.00 fee payment. Count II charged her with violating SCR 3.130–1.4(a), which states that "[a] lawyer shall:

... (3) keep a client reasonably informed about the status of the legal representation [and] (4) promptly comply with reasonable requests for information." She admits violating this rule by failing to maintain the level of communication with Nabb as was appropriate under the circumstances. Count IV charged her with violating SCR 3.130–8.1(b), which states that "a lawyer ... shall not: ... (2) knowingly fail to respond to a lawful demand for information from [a] disciplinary authority." She admits violating this rule by failing to respond to the two letters from the Office of Bar Counsel.

While Bock admits to violating the rules as charged in Counts I, II, and IV, she denies the violation alleged by Count III. Count III charged her with violating SCR 3.130–1.16(d), which provides that, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled...." Bock states that she ultimately retrieved Nabb's file and turned it over to successor counsel. Bock therefore moves this Court to dismiss Count III and the KBA has no objection.

### KBA File 13763

On May 18, 2005, Tim Gunn, Bock's boyfriend and later husband, was taken into custody for a suspected DUI while driving Bock's vehicle. Upon contacting Bock, the police told her that she would need to come to the scene to provide proof of insurance or her vehicle would be towed.

Bock asserts that, at the time of the incident, she was not aware that her vehicle insurance lapsed during the previous year. She contends that, unbeknownst to her, Kenneth Travis, Bock's live-in boyfriend in 2004, had failed to pay for vehicle insurance bill, instead developing a simulated insurance card using a computer and a printer. In taking possession of the card, Bock incorrectly believed that the insurance matter had been properly addressed.

Bock was indicted and arraigned in Webster County and the matter was subsequently resolved in May 2007. The Circuit Court granted Bock's Motion to Dismiss the original charge of a felony violation and amended it to a misdemeanor. She pled guilty to the lower charge.

On May 2, 2008, the Inquiry Commission charged Bock with violating SCR 3.130–8.4(b) in light of her guilty plea to a Class A misdemeanor. Bock failed to respond to the Inquiry Commission Complaint. She has satisfied, in full, the probationary terms of her plea agreement to the misdemeanor.

In Count I, the KBA charged Bock with violating SCR 3.130–8.4(b), which provides that "[i]t is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Bock admits violating this rule because she entered a guilty plea to the knowing presentation of a counterfeit proof of insurance certificate card regarding motor vehicle insurance coverage. Count II charged her with violating SCR 3.130–8.1(b), which states that "a lawyer ... shall not: ... (2) knowingly fail to respond to a lawful demand for information from [a] disciplinary authority." She admits violating this rule by failing to file a response to the Inquiry Commission Complaint.

### KBA File 15156

In July 2006, Kevin Rushing sought legal representation from Bock to recover a $1,000 bond previously posted for his un-

cle. Rushing, an inmate at the Henderson County jail, indicated that he would pay Bock $250 or $300 if she would recover the bond and place the net amount in his jail account.

Bock claims that she recovered the proceeds, cashed the bond refund check per a previous assignment document signed by Rushing, retained her agreed-upon fee, and tentatively made arrangements to directly deliver the net amount to Rushing. However, Rushing's mother, Debra Rushing, visited Bock's office. Debra Rushing knew about the particulars of Bock's representation, including the assignment of the bond proceeds document and the $300 representation fee. Bock posits that Rushing himself could have been the only person to provide such information to his mother.

Debra Rushing told Bock that she was on her way to visit her son in jail and that she would take the funds to him per his request. Based upon his initial letter to her and her visit to him at the jail one week earlier, Bock knew that Rushing wanted to receive the proceeds as soon as possible. Bock thus felt that tendering the money to his mother constituted an appropriate means to deliver the funds to Rushing.

The KBA does not contest Bock's version of events. However, Rushing would later contend that he never received the bond money. As a result, Bock was served with a Bar Complaint in early June 2007. She did not file a response to Rushing's Complaint.

In Count I, the KBA charged Bock with violating SCR 3.130–1.3, which provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Bock admits violating this rule by failing to directly forward the bond refund money to Rushing. Count V charged her with violating SCR 3.130–

8.1(b), which states that "a lawyer ... shall not: ... (2) knowingly fail to respond to a lawful demand for information from [a] disciplinary authority." She admits violating this rule by failing to respond to the Bar Complaint.

However, Bock moves this Court to dismiss Counts II, III, and IV, as she denies that she kept the bond money for herself, giving it instead to Rushing's mother. Count II charged her with violating SCR 3.130–1.15(b), which states that "[u]pon receiving funds ... in which a client ... has an interest, ... a lawyer shall promptly deliver to the client ... [the] funds ... that the client ... is entitled to receive." Count III charged her with violating SCR 3.130–8.4(b), which provides that "[i]t is professional misconduct for a lawyer to ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Count IV charged her with violating SCR 3.130–8.4(c), which provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The KBA has no objection to the dismissal of these charges.

### Negotiated Sanction

Bock admits her misconduct in these matters constitutes a violation of SCR 3.130–1.4(a), SCR 3.130–8.4(b), two counts of SCR 3.130–1.3, and three counts of SCR 3.130–8.1(b). She and the KBA have agreed to a negotiated sanction pursuant to SCR 3.480(2) and now request this Court to impose a one hundred eighty-one day suspension from the practice of law, with ninety days to serve, and the remaining ninety-one days probated until December 2, 2013, provided that she continues her participation and compliance with KYLAP program. Additionally, she must refund $300.00 to her former client, Van

Nabb, within one hundred twenty days of this Order.

In its response, the KBA contends that the recommended discipline is appropriate and supported by Kentucky case law. For example, in *KBA v. Herald,* 203 S.W.3d 139 (Ky.2006), three cases against Herald were consolidated for review. In the first, Herald took no steps to collect a default judgment she obtained in her client's favor, failed to inform the client that the judgment had been obtained, and, after her phone was disconnected, did not notify the client of her new contact information. More than a year after the default judgment was entered, the judgment debtor filed bankruptcy. The Board of Governors found Herald guilty of violating SCR 3.130–1.3, 3.130–1.4(a) and (b), and 3.130–8.1(b). She was also found guilty of violating SCR 3.130–1.3, 3.130–8.1(b), and 3.130–3.4(c) for failing to take any action following the filing of a notice of appeal for another client even after the Court of Appeals issued a show cause order demanding a response to a motion to dismiss the appeal or the payment of a $100.00 fine. Herald did not file any response and paid the fine, albeit belatedly. She subsequently neither informed her client about the order entered against her nor appeared at the hearing at which the Court of Appeals ordered her appearance. Subsequent violations arose due to Herald's failure to communicate with yet another client for over three (3) months. Herald was found guilty of violating SCR 3.130–1.4(a), 3.130–1.16(d), and 3.130–8.1(b) for failing to tell her client how to contact her after her phone was disconnected, failing to return a client file, and failing to respond in the disciplinary matter, respectively. This Court thus suspended her from the practice of law for one hundred eighty-one days.

In *Kentucky Bar Association v. Burlew,* 198 S.W.3d 585 (Ky.2006), two cases were submitted as defaults after Burlew failed to respond to charges alleging violations of SCR 3.130–1.1, 3.130–1.3, 3.130–1.4(a) and (b), 3.130–1.16(d), 3.130–5.5(a), 3.130–8.3(c), and two counts of 3.130–8.1(b). At the time the case was considered, Burlew was under suspension for both nonpayment of bar dues and failure to meet CLE requirements; he had also been privately admonished for violating other rules of professional conduct. He received a one hundred eighty-one day suspension for his conduct, which included undertaking representation in Indiana despite neither being licensed or admitted *pro hac vice,* abandoning his client on the date of pretrial and telling her to appear and plead guilty, and failing to refund said client's $300,000. His punishment also stemmed from accepting a $375.00 payment from another client to prepare adoption papers; he never presented the papers to the client, did not refund the money, and stopped returning calls.

In *Myles v. Kentucky Bar Association,* 289 S.W.3d 561 (Ky.2009), Myles admitted to a litany of violations spanning four KBA case files, including SCR 3.130–1.1, 3.130–1.15(a), 3.130–1.16(d), 3.130–7.50(1), two counts of SCR 3.130–1.15(b), two counts of 3.130–1.3, two counts of 3.130–1.4(a), and two counts of 3.130–8.1(b). Myles resolved the matter through consensual discipline, receiving a suspension from the practice of law for one hundred eighty-one days, with all but thirty days probated for five years, conditioned on his repayment of funds owed to his client.

### Disposition

Agreeing that the negotiated sanction proposed in Bock's motion is appropriate, it is ORDERED that:

1. Valerie Lynn Bock shall be suspended from the practice of law for one hundred eighty-one days, of which ninety days are to be served and the balance of ninety-one probated until December 2, 2013, subject to the following conditions:

A. Continued compliance with the terms and provisions of the Supervision Agreement dated December 2, 2008 with the Kentucky Lawyers Assistance Program.

B. Execution of a Release and Authorization to permit the Office of Bar Counsel to obtain information from the Kentucky Lawyers Assistance Program concerning Bock's compliance with the terms of the Supervision Agreement.

C. Under the Charge in KBA File 12040, Bock shall refund Van Nabb the sum of $300.00 within one hundred twenty days of this Opinion and Order Granting Bock's Motion and furnish proof to the Office of Bar Counsel.

D. In the event that during the probationary period Bock violates the terms of the Supervision Agreement or fails to pay the required refund, the Kentucky Bar Association, through the Office of Bar Counsel, may file a Motion for the imposition of the probated period of suspension.

2. Pursuant to SCR 3.390, Bock shall, within ten days from the entry of this Opinion and Order, notify all clients with Kentucky cases in writing of her inability to represent them, and notify all courts in which she has matters pending of her suspension from the practice of law, and furnish copies of said letters of notice to the Director of the KBA. Furthermore, to the extent possible and necessary, Bock shall immediately cancel and cease any advertising activities in which she is engaged; and

3. Count III of the Charge in KBA File 12040 and Counts II, III, and IV of the Charge in KBA File 15156 are hereby dismissed.

4. In accordance with SCR 3.450, Bock shall pay all costs associated with these proceedings, said sum being $348.08, for which execution may issue from this Court upon finality of this Opinion and Order.

All sitting. All concur.

ENTERED: March 24, 2011.

/s/ John D. Minton, Jr.
    Chief Justice